Filed 5/23/25  P. v. Thompson CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D083636 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD190308) |
| MIGUEL ANGEL THOMPSON, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, David J. Danielsen, Judge.  (Retired Judge of the San Diego Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed and remanded with instructions.

Brad J. Poore, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Britton B. Lacy, Deputy Attorneys General, for Plaintiff and Respondent.

Following his resentencing under Penal Code section 1172.75, Miguel Angel Thompson appeals the sentencing court's denial of his motion under

*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 and his motion to strike his prior serious felony enhancements, contending there was insufficient evidence to support a finding that he was an associate of the Mexican Mafia.

We conclude (1) the record contains substantial evidence that Thompson was a *former* associate of the Mexican Mafia and (2) the record does not support Thompson's claim that the court misapprehended his status as a gang *dropout* at the time of sentencing.  Besides, Thompson forfeited this claim of factual error by not raising it at sentencing.  Finally, the trial court did not abuse its discretion in denying Thompson's *Romero* motion or his motion to strike his prior serious felony enhancements, as the record indicates the court afforded minimal weight, if any, to Thompson's gang affiliation in exercising its sentencing discretion.  We thus affirm.  We remand, however, for the trial court to address Thompson's letter about custody credits under *People v. Fares* (1993) 16 Cal.App.4th 954 to the extent it has not done so.

I.

A.

In 2002, Geraldo Ojito was charged with murder and jailed awaiting trial.  From September 2004 through January 2005, Ojito was Thompson's cellmate.

Thompson wrote a "wila," or note, threatening to "green light" anyone who testified against Ojito in his upcoming murder trial.  It was found in the home of a key prosecution witness for Ojito's trial.  Thompson wrote a second "wila" in 2005 that confirmed Thompson had written the first one.

Thompson was charged with and convicted of attempting to dissuade a witness by force or threat.  (Pen. Code, § 136.1, subd. (c)(1); count 1.)  The

2

jury found not true the allegation that Thompson committed the offense for the benefit of, at the direction of, or in association with a criminal street gang. (§ 186.22(b)(1).)

Because Thompson had two prior strikes, he was sentenced to an indeterminate prison term of 25 years to life on count 1. He was also sentenced to a determinate term of 12 years: five years each for two prior serious felony enhancements and two years total for three prison prior enhancements (as the sentence on the third was stayed).

B.

Under Penal Code section 1172.75, the California Department of Corrections and Rehabilitation identified Thompson as a person serving a prison term under section 667.5(b) that could be legally invalid. The trial court appointed counsel to represent Thompson.

Based largely on Thompson's criminal history and prison record, the People opposed resentencing Thompson to a lesser sentence beyond striking the prison prior enhancements, arguing that would endanger public safety. In their brief, the People stated Thompson "*is* an Otay gang member" as well as "an associate of EME, the Mexican Mafia." (Italics added.)

Thompson, meanwhile, "invit[ed]" the court to strike or dismiss one of his two strike priors in addition to the two invalid prison prior enhancements, contending his lack of recent discipline, positive programming, age, health, and his youth at the time he committed the strikes took him outside the spirit of the Three Strikes law.

Thompson's prison record indicates he was previously identified as an associate of the Mexican Mafia. By 2019, however, CDCR records formally identified Thompson as a "dropout."

3

C.

At the January 2024 resentencing hearing, the court indicated it had read Thompson's sentencing brief, the People's opposition, the information, the original abstract of judgment, the original and supplemental probation reports, Thompson's original statement in mitigation, the People's original statement in aggravation, and supplemental materials submitted by Thompson.

Thompson committed his first strike prior—an assault with a deadly weapon—when he was 21 years old. A shoplifting codefendant was chased by a security guard, whom Thompson hit on the neck with a bottle. He committed his second strike prior—a robbery armed with a firearm—in 1992 at the age of 25. While transporting undocumented immigrants, a dispute arose over payment, resulting in the charges.

Defense counsel argued Thompson's youth when the strikes were committed and the fact there was not "anything really terribl[e]" about them warranted striking at least one. Counsel acknowledged Thompson "wasn't a great prisoner" at first. He noted, however, that all changed in 2018, when Thompson successfully debriefed from the Mexican Mafia. Thompson also began taking classes and bettering himself over the ensuing five years. Counsel contended Thompson's "criminal record is not really that terrible" and that "no one was hurt" during the commission of the current offense.

The People noted Thompson's criminal conduct had not ended in 2018; in 2018, he was convicted of possessing a dangerous stabbing weapon in prison, and in 2021, he was caught in possession of a controlled substance in prison. Thompson's CDCR disciplinary history "is significant and shows the dangerousness that [Thompson] poses." The People stated, "The fact that he has the ability or the power to, more or less, put a green light out shows his

4

position within the gang because not just anyone can do that. Yet he was able to do that." The People argued Thompson's behavior had not changed and he "remains a danger to the community if" his sentence were to be reduced.

The court noted Thompson's resentencing "shall result in a lesser sentence . . . unless the court finds by clear and convincing evidence that imposing such a lesser sentence would endanger public safety." The court explained public safety is endangered if it is likely "the dismissal of the enhancement would result in physical injury or serious danger to others." In assessing whether that was true here, the court noted the importance of exploring and considering "a number of factors."

Regarding Thompson's criminal history, the court noted that from early adulthood he committed crimes "on a regular basis." The court disputed that the first strike was not serious and concluded the second was "much more serious." Between the beginning of his criminal career and the commission of the current offense—which the court deemed a "significant strike"—Thompson spent 14 of 20 years in prison. His "performance on probation and parole during that time was considered abysmal and his behavior in the institutions was noted as being very substandard."

As to the current offense, "threats of death on individuals who would have the temerity to come to court and tell the truth" are "a very serious assault on the justice system." The threat here was "insidious" due to "the claim of connections that allows one to make those threats and never personally have to carry them out to have associates who were well known in all communities . . . for carrying out the exact type of threats that were involved."

On the other hand, the court found "some very positive things," with Thompson "embracing opportunities" to better himself.

The court indicated it also considered Thompson's age, his length of incarceration, his health, "the changes in [Thompson's] circumstance since the original sentencing," and Thompson's "previous opioid problem and his efforts to address" it.

The court concluded, based on "everything that [it] kn[e]w," it "would not strike the strikes" because Thompson "brings himself within the spirit of" the Three Strikes law. Assessing "the totality of all of these issues" and considering "all of the facts and circumstances of this case," the court also concluded a lesser sentence "would endanger public safety." The court noted its discretion to strike the two prior serious felony enhancements but, "considering all of the factors relevant to that, that would not be an appropriate exercise of discretion."

The court thus struck only the prison priors and sentenced Thompson to a prison term of 25 years to life plus ten years.

Thompson's counsel did not object at all during the sentencing hearing.

## II.

We review trial court decisions denying *Romero* motions and motions to strike prior serious felony enhancements for an abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 374, 378.) "This standard is deferential" and "asks in substance whether the ruling in question 'falls outside the bounds of reason' under the applicable law and the relevant facts." (*People v. Williams* (1998) 17 Cal.4th 148, 162.) "The typical abuse of discretion standard involves an analysis of whether the trial court's decision is supported by "'substantial evidence.'"" (*People v. Fuiava* (2012) 53 Cal.4th 622, 711.) "'A substantial evidence inquiry examines the record in the light most favorable

6

to the judgment and upholds it if the record contains reasonable, credible evidence of solid value upon which a reasonable trier of fact *could* have relied in reaching the conclusion in question," even in the face of "countervailing evidence." (*Ibid.*)

Thompson's arguments on appeal are not a model of clarity. As best we can discern them, we address them in turn. We deem forfeited any arguments we do not address for failure to adequately develop them. (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 333, fn. 11 ["Issues not adequately developed in an appellate brief are generally deemed forfeited."].)

A.

Thompson appears to contend the trial court erred in finding he was *previously* an associate of the Mexican Mafia. To the extent the court made such a finding, substantial evidence supports it. While Thompson claims he was never really an associate of the Mexican Mafia and instead only impersonated one, Thompson's prison record is replete with references to his association with the Mexican Mafia. Even were there evidence to the contrary—though Thompson points to none in the record—this is substantial evidence of Thompson's former gang affiliation.

To the extent Thompson claims the court erroneously found he was *still* an associate of the Mexican Mafia at the time of sentencing, the record does not support this contention. Thompson's argument relies on certain statements made by (1) the prosecution in its sentencing brief and during the sentencing hearing and (2) the court during sentencing. But this reliance is misplaced.

First, to the extent the prosecution portrayed Thompson's gang affiliation as ongoing, there was substantial evidence before the court that Thompson was no longer an associate of the Mexican Mafia. Thompson's

7

sentencing brief twice referenced his successful debrief from the Mexican Mafia. His prison records confirm Thompson's status as a gang dropout. And during the hearing, defense counsel again informed the court that Thompson had successfully debriefed from the Mexican Mafia.

Second, contrary to Thompson's claim, the court's statements do not imply it misapprehended Thompson's gang affiliation at the time of sentencing. In the portion of the hearing transcript on which Thompson relies, the court recounted the details of the underlying offense in determining it was "a significant strike," but the court did not conclude Thompson was dangerous because he presently retained the ability to put a "green light" on someone.

Accordingly, these claims fail to persuade on this record.

## B.

Next, we agree with the People that Thompson forfeited his challenges to the court's supposed and erroneous reliance on his Mexican Mafia association by failing to raise this issue below. Thompson claims he preserved his challenges and, at any rate, challenges to the sufficiency of the evidence need not be raised below to preserve them for appeal. (Citing *People v. Cuccia* (2002) 97 Cal.App.4th 785, 795.) But contrary to Thompson's claim, he raised no objection below, and the actions he did take were inadequate to preserve his arguments for appeal.

"[T]he forfeiture rule for alleged sentencing errors" is that, "unless a party makes a contemporaneous objection, he or she generally cannot challenge a court's ruling for the first time on appeal." (*People v. McCullough* (2013) 56 Cal.4th 589, 594.) This is because, "[a]lthough the court is required to impose sentence in a lawful manner, counsel is charged with understanding, advocating, and clarifying permissible sentencing choices at

8

the hearing." (*People v. Scott* (1994) 9 Cal.4th 331, 353.) There are narrow exceptions to the rule for some "legal error[s]," which appellate courts will review "'because such error[s are] "clear and correctable" independent of any factual issues presented by the record at sentencing'" (*McCullough*, at p. 594), but forfeiture generally applies to "factual error[s]" (*ibid.*), which are "not readily susceptible of correction on appeal" (*Scott*, at p. 355).

Thompson asserts a factual error: that the court purportedly misapprehended Thompson's gang affiliation status in declining to strike his strike priors and prior serious felony enhancements. A defendant "may not 'transform . . . a factual claim into a legal one by asserting the record's deficiency as a legal error.'" (*McCullough*, 56 Cal.4th at p. 597.) By failing to object to the trial court's purportedly mistaken reliance on his gang affiliation, Thompson "forfeit[ed] both his claim of factual error and the dependent claim challenging 'the adequacy of the record on that point.'" (*Ibid.*) The purported error could easily have been corrected had Thompson's counsel contemporaneously objected below. (*Scott*, 9 Cal.4th at p. 351.) The court afforded such an opportunity when, after imposing sentence, it asked, "Is there anything else?" Defense counsel responded, "No." We thus invoke the forfeiture rule "as a matter of policy to ensure the fair and orderly administration of justice." (*Ibid.*) The cases on which Thompson relies are inapt and do not persuade us otherwise.

## C.

At any rate, to the extent Thompson claims the court abused its discretion in denying his motions, we disagree. While Thompson contends the court's misapprehension of his gang affiliation at the time of sentencing "was central" to the court's denial of his motions, the record discloses otherwise.

9

1.

We deferentially review *Romero* rulings for abuse of discretion and "must consider whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of [the defendant's] background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though [the defendant] had not previously been convicted of one or more" strikes. (*Williams*, 17 Cal.4th at pp. 161-162.) As the circumstances must be "'extraordinary'" for a defendant to "'be deemed to fall outside the spirit'" of the Three Strikes Law, "the circumstances where no reasonable people could disagree that the [defendant] falls outside the spirit of the [T]hree [S]trikes scheme must be even more extraordinary." (*Carmony*, 33 Cal.4th at p. 378.)

The court was thorough at the sentencing hearing here. While it did not specifically mention Thompson's debriefing as a mitigating factor, it did rely on the fact that Thompson "has decided to rehabilitate his life" and was "now embracing opportunities and completing opportunities," which it said it "need[ed] to take . . . into consideration"—and that it did so. Meanwhile, it did not mention Thompson's gang affiliation, past or present, as one of the many aggravating circumstances it considered. Thus, to the extent the court considered Thompson's gang affiliation, it accorded it minimal, rather than outsized, significance.

Meanwhile, the court carefully considered Thompson's underlying and previous offenses, his background, his age, and other relevant factors before determining Thompson "is someone who is clearly . . . within the spirit of" the Three Strikes law. On this record, we cannot conclude the court abused its discretion in denying Thompson's *Romero* motion.

2.

Though Thompson did not raise Penal Code section 1385(c) during the sentencing hearing, he argued it in his sentencing brief as a reason to strike his prior serious felony and prison prior enhancements. Construing this argument as a motion to strike Thompson's prior serious felony enhancements, we conclude the court did not abuse its discretion in denying it.

Amended Penal Code section 1385(c)(1) provides that, "[n]otwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so." Section 1385(c)(2) requires the court to "consider and afford great weight to evidence offered by the defendant to prove" any of the enumerated mitigating circumstances, "unless the court finds that dismissal of the enhancement would endanger public safety." "Stated simply, if the court does not conclude that dismissal would endanger public safety, then mitigating circumstances strongly favor dismissing the enhancement. But ultimately, the court must determine whether dismissal is in furtherance of justice. This means that, absent a danger to public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement." (*People v. Walker* (2024) 16 Cal.5th 1024, 1036.)

As Thompson acknowledges, the court found striking his prior serious felony enhancements would endanger public safety. He claims, however, that this "finding was based on a fact that was not supported by substantial evidence"—his continuing association with the Mexican Mafia. Yet as explained above, such a reading of the sentencing hearing transcript takes the court's words out of context. The portion of the sentencing hearing transcript Thompson quotes comes from the court's analysis of the

11

seriousness of the underlying offense, which occurred more than a decade before Thompson's debriefing and thus has no bearing on his gang affiliation—or lack of one—at the time of sentencing. The court did not mention gangs at all in concluding dismissing the prior serious felony enhancements would endanger public safety. Instead, the court made clear it was basing its public safety determination on its "consideration of all of the facts and circumstances of this case," demonstrating Thompson's gang affiliation, to the extent the court considered it at all, was only one of many factors the court considered.

* * *

In sum, the court properly weighed and considered relevant factors in denying both Thompson's *Romero* motion and his motion to strike his prior serious felony enhancements. We therefore discern no abuse of discretion.

III.

We affirm.  We received, however, a copy of a *Fares* letter that was transmitted to the trial court to inform it of an error in the calculation of Thompson's custody credits.  We judicially notice the *Fares* letter (Evid. Code, § 452(d)) and note we have received no notice the trial court has either amended or denied amendment of Thompson's custody credits as a result.  To the extent it has not already done so, we remand this matter for the sole purpose of allowing the trial court to verify proper custody credits were awarded and, if not, correct the award, issue an amended abstract of judgment, and forward a copy to the California Department of Corrections and Rehabilitation.


CASTILLO, J.

WE CONCUR:


McCONNELL, P. J.


KELETY, J.

13